**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JUSTIN NELSON and REBECCA MASSICOTTE, individually and on behalf of a class of all persons and entities similarly situated,<br><br>            Plaintiffs<br><br>vs.<br><br>ELITE AGENCY LLC<br><br>            Defendant. | Case No. |

**CLASS ACTION COMPLAINT**

Plaintiffs Justin Nelson and Rebecca Massicotte (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

**Preliminary Statement**

1.      "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Plaintiff Justin Nelson brings this action under the TCPA alleging that Elite Agency LLC called the Plaintiff, whose number is on the National Do Not Call Registry. Those calls were made without the call recipient's prior express written consent.

4. Plaintiff Rebecca Massicotte also alleges violations of the National Do Not Call Registry and she also alleges that Defendant used automated systems to make telemarketing calls from and into Florida, and that by doing so, Defendant has violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

5. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

6. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

7. Plaintiff Justin Nelson is a person in this District.

8. Plaintiff Rebecca Massicotte is an individual.

9. Defendant Elite Agency LLC is a Deerfield Beach, Florida based company that sells various sorts of health insurance products.

## Jurisdiction & Venue

10. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law. This Court has supplemental jurisdiction over the state law claims since they relate to the same telemarketing campaign.

11. This Court has general personal jurisdiction over Defendant because it is headquartered and has its principal place of business in Florida, in Broward County.

12. Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this state and judicial district.

## CLAIM BACKGROUND

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

14.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The Florida Telephone Solicitations Act

17.     The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

18.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

19.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining

4

information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

20.     Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## FACTUAL ALLEGATIONS

Plaintiff Nelson

21.     Plaintiff is, and since June of 2025, the subscriber of cellular telephone number—(517) 769-XXXX.

22.     The telephone number was used as a personal residential telephone number.

23.     It is used for personal use only as one would use a landline telephone number in a home.

24.     It is used primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes.

25.     Plaintiff personally pays for this cell phone plan, and is not reimbursed by a business.

26.     Plaintiff has never had this cell phone number associated with a business.

27.     Plaintiff has never used this cell phone number in any business or marketing materials.

28.     Plaintiff's telephone number has been registered with the National Do Not Call Registry since November 13, 2024.

29.     On November 11, 2025, Plaintiff received an autodialed call from (517) XXX-XXXX promoting marketplace insurance products offered by Defendant.

30.     Plaintiff informed the caller he was not interested.

31.     On December 3, 4, 6, 15, 2025, Plaintiff received multiple autodialed calls from (517) XXX-XXXX, each promoting Defendant's insurance products.

32.     On December 4, 2025, Plaintiff received additional autodialed calls from (517) (517) XXX-XXXX promoting Defendant's insurance offerings.

33.     During one such call, Plaintiff expressly requested that no further calls be made.

34.     On January 5, 2026, Plaintiff received an autodialed call from (517) XXX-XXXX promoting Defendant's insurance products. Plaintiff again instructed the caller to stop calling him.

35.     On February 10, 2026, Plaintiff received an autodialed call from (517) XXX-XXXX promoting Defendant's insurance products.

36.     During this call, Plaintiff spoke to a live agent identifying themselves as Yendor Hepburn of Elite Agency LLC.

37.     Mr. Hepburn discussed insurance products offered by Defendant and provided a callback number of (517) 201-1623.

38.     Public records identify Yendor Hepburn as a licensed insurance producer associated with Elite Agency LLC, with a business presence in Florida.

39.     The calls all promoted the same or substantially similar insurance products, used similar caller identification numbers, and were part of a uniform telemarketing campaign attributable to Defendant.

<u>Plaintiff Massicotte</u>

40.     Plaintiff Massicotte is, and at all relevant times was, the subscriber of the telephone number (813) 409-XXXX.

41.     The telephone number was used as a personal residential telephone number.

42. It is used for personal use only as one would use a landline telephone number in a home.

43. It is used primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes.

44. Plaintiff does not maintain a landline telephone and does not have any other telephone number.

45. Plaintiff personally pays for this phone plan and is not reimbursed by a business.

46. Plaintiff has never had this cell phone number associated with a business.

47. Plaintiff has never used this cell phone number in any business or marketing materials.

48. Plaintiff's telephone number has been registered with the National Do Not Call Registry since July 15, 2015.

49. On June 25, 2024, Defendant initiated an autodialed telemarketing call to Plaintiff from caller ID (813) 587-XXXX promoting Defendant's insurance products. Plaintiff rejected the call.

50. On August 16, 2024, Defendant initiated an autodialed telemarketing call to Plaintiff from caller ID (813) 587-XXXX promoting insurance products offered by Defendant. Plaintiff informed the caller she was not interested.

51. On August 28, 2024, Defendant initiated an autodialed telemarketing call to Plaintiff from caller ID (813) 587-XXXX promoting Defendant's insurance products. Plaintiff rejected the call.

52.     On September 5, 2024, Defendant initiated multiple autodialed telemarketing calls to Plaintiff from caller IDs (813) 587-XXXX promoting insurance products offered by Defendant. Plaintiff informed the caller she was not interested.

53.     On September 5, 2024, Defendant initiated additional autodialed telemarketing calls to Plaintiff from caller ID (561) 464-XXXX promoting Defendant's insurance products, all of which she rejected.

54.     During that call, the agent continued Defendant's sales pitch for insurance products and then Plaintiff within spoke Defendant's call system to another representative identified as "Bryan."

55.     Bryan continued to promote Defendant's insurance products and services. During the call.

56.     Bryan provided Plaintiff with a callback number of (561) 464-XXXX and directed Plaintiff to the website **eliteagencyins.com**, which is owned and operated by Defendant Elite Agency LLC.

57.     The provision of Defendant's website and callback number during the call demonstrates that the call was made directly by Defendant's agents using Defendant's telemarketing system.

58.     Later that same day, Plaintiff received multiple additional calls from (561) 464-XXXX, the same callback number provided by Bryan.

59.     These calls were part of the same telemarketing campaign conducted by Defendant.

60.     Each of these calls was placed by Defendant as part of the same telemarketing campaign promoting its insurance products

8

61. The calls were placed using equipment that had the capacity to store and dial telephone numbers in an automated fashion.

62. During the September 5, 2024 call in which Plaintiff was connected to the representative identified as "Bryan," Plaintiff experienced a noticeable "click" followed by a brief period of silence before the agent began speaking.

63. Upon information and belief, Defendant utilized a predictive dialer and/or automated dialing platform that is capable of dialing telephone numbers without human intervention, and which connects answered calls to available agents, including the agent identified as "Bryan."

64. The use of multiple outbound telephone numbers, including (813) 587-XXXX and (561) 464-XXXX, in conjunction with identical marketing content and agent follow-up, further demonstrates that Defendant employed a system designed to automatically dial large volumes of telephone numbers using rotating caller identification numbers.

65. Accordingly, the calls at issue were made using an automated system for the selection and dialing of telephone numbers within the meaning of the FTSA and the TCPA.

66. The aforementioned calls to the Plaintiffs were unwanted.

67. The calls were nonconsensual encounters.

68. Plaintiffs' privacy has been violated by the above-described telemarketing calls.

69. Plaintiffs never provided his consent or requested the calls.

70. Plaintiffs and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because their phone lines were tied up, their do not call requests were dishonored, they were charged for the calls and their privacy was

9

improperly invaded. Furthermore, the calls unnecessarily used battery life, storage space, bandwidth, and wear and tear.

71. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

## CLASS ACTION ALLEGATIONS

72. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

73. Plaintiffs bring this action on behalf of themselves and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

74. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call, text message, or combination thereof, from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

**Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S., who, (1) received a telephonic sales call from Defendant made from or into Florida regarding Defendant's insurance services, (2) using the same equipment or type of equipment utilized to call Plaintiff, (3) since July 1, 2021.

75. Plaintiff Massicotte is a member of and will fairly and adequately represent and protect the interests of both Classes and has no interests that conflict with any of the Class members.

76. Plaintiff Nelson is a member of and will fairly and adequately represent and protect the interests of both the National Do Not Call Registry Class and has no interests that conflict with any of the Class members.

77.     Excluded from the Classes are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

78.     Plaintiffs and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

79.     This Class Action Complaint seeks injunctive relief and money damages.

80.     The Classes as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

81.     Plaintiffs do not know the exact number of members in the Classes, but Plaintiffs reasonably believes Class members number, at minimum, in the hundreds for each class.

82.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

83.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

84.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

85.     There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

a.      Whether Defendant made multiple calls to Plaintiffs and members of the National Do Not Call Registry Class;

11

b.       Whether Defendant's conduct constitutes a violation of the FTSA;

c.       Whether Defendant's conduct constitutes a violation of the TCPA; and

d.       Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

86.      Further, Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have no interests which are antagonistic to any member of the Classes.

87.      Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

88.      Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

89.      The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

90.      Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do**
**Not Call Registry Class)**

91.      Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

12

92. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

93. Defendant's violations were negligent, willful, or knowing.

94. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

95. Plaintiffs and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION

**Violation of the Florida Telephone Solicitation Act,**
**Fla. Stat. § 501.059**
**On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class**

96. Plaintiff Massicotte incorporates by reference the foregoing allegations as if fully set forth herein.

97. Plaintiff Massicotte brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendant.

13

98.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

99.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

100.    Defendant failed to secure prior express written consent from Plaintiff Massicotte and the Class Members.

101.    In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

102.    Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

103.    As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

14

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, prays for the following relief:

A.      Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B.      Injunctive relief prohibiting Defendant from using artificial or prerecorded voices to contact cell phones and other protected lines, except for emergency purposes, in the future;

C.      That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation;

D.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes; and

E.      Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: March 31, 2026                    PLAINTIFF, on behalf of himself
                                         and others similarly situated,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

16